WOOD *et al. v.* LANE.

The judge did not abuse his discretion in granting a first new trial.

March 26, 1892. Argued at the last term.        *Judgment affirmed.*

New trial. Wills. Before Judge FORT. Dooly superior court. March term, 1891.

James A. Lane as executor of John A. Mayo offered the will of Mayo for probate. A *caveat* was interposed by next of kin and heirs at law of Mayo, on the grounds that the instrument propounded was not the last will of Mayo; that Mayo was not capable of making a will, not being of sound and disposing mind and memory at the time the paper was executed; that at the time the paper was executed Lane exercised undue influence over the mind and body of Mayo, who was under the power, influence and control of Lane, and Lane substituted his own will for the will of Mayo; and that the pretended will was signed by Mayo under undue influence exercised by Lane over him, and Lane by the use of fraud brought to bear on Mayo and over his mind and body, caused Mayo to sign the pretended will. In the court of ordinary there was a judgment in favor of the propounder. The case was taken by appeal to the superior court where there was a verdict in favor of the caveators. The propounder moved for a new trial. His motion was granted on all the grounds taken, the judge stating that he could not approve the verdict. The caveators excepted. The grounds of the motion were, that the verdict was contrary to law and evidence; that there

was no evidence showing a want of mental capacity at the time of the execution of the will; and that one of the jurors, Bowen, was related to Wood, one of the caveators, and thereby disqualified to serve as a juror, which fact was unknown to propounder or his counsel. In support of the last ground movant produced the affidavit of J. A. Lane to the effect that Bowen's father-in-law was the brother of the husband of Mrs. M. J. Wood, one of the caveators, that he had been subpoenaed as a witness by the caveators, and that all of these facts were unknown to deponent until after the trial; and the affidavit of the counsel for the propounder, that they did not know of the relationship of Bowen to the caveators and parties until after the trial.

Much evidence was introduced, and it was of a conflicting character. So far as the record discloses there has never been but one trial of the case in the superior court. It is insisted by the caveators that the verdict was demanded, because the paper presented for probate was never shown to be a will, because of the plain and manifest want of proof of the execution of the will, and because no other verdict could have been legally rendered under the law, the evidence and the charge of the court. The paper propounded had for attesting witnesses Busbee, Stovall and Crum, in the order named. The proof of its execution, briefly stated, was: Dr. Stovall testified: He was a subscribing witness to the will, and signed it as such at the instance and request of Mayo. Thinks that Mayo at that time was of sound mind and disposing memory as much as ever he was. It was read over to him very distinctly; part of it again. He signed it freely and voluntarily. It had been more than two years since he had seen Mayo, and he was not Mayo's family physician. He was asked by Busbee, who told him that he (Busbee) had been sent for to write the will, to go down there to see if Mayo was competent

to make a will. The propounder also requested witness to go. The will was signed at the propounder's house. Crum accompanied Busbee and witness there, and these three were the only ones who were about the room when the will was signed; Lane may have passed through the room during the time. For the benefit of the light Crum drew the paper right in the door of the room, and during the time he was drawing it witness sometimes was sitting down, sometimes lying down, and sometimes sitting by Mayo and talking to him. Mayo dictated the will only as to the property; Crum wrote it—asked him what he wanted to do with the property, and he dictated it himself. While it was being written Busbee was in several feet of the door, Crum in the door, Busbee and witness in back part of the room. It was in the morning. The signature is Mayo's, in his own handwriting. He sat up in bed and wrote it himself. They proposed to him that they would carry it to him and fix it so that he could write. He said, no, he could sign it, and he sat up in bed and signed it. There were no other persons in the room besides the family, Busbee, Crum and witness. Witness took a short nap while the will was being written.—Crum testified: He wrote the will, the substance of it being dictated by Mayo, who at the time appeared to be of sound and disposing mind and to understand what he was doing. He signed the will freely and voluntarily, and was acquainted with its contents. Witness read it over to him near his head, distinctly and slowly. At that time his mind seemed to be perfectly clear and good. There was no person except him who dictated any portion of the will as to the substance of it; of course it was put in legal form by witness and Busbee, attorneys. Witness went to the place at the request of Busbee. When he, Busbee and Stovall got there they found testator lying on a bed in a large room. Propounder was in

there some of the time, and the wife of propounder once or twice. Testator directed the writing of his will. Up to that time witness had never seen Mayo, and judges of his mind simply from his conversation and appearance. Propounder was in the room some of the time while they were fixing up the will. Witness was near the door when writing the will. Does not remember that any suggestion was made to Mayo as to the manner of making the will or how the will should be drawn. When the statements were made by Mayo as to what he wanted done, there was no memorandum of them written down by Busbee or witness, that witness remembers. Mayo signed the will just as witness wrote it, and after the will was drawn it was signed as soon as it could be read. Propounder was called in while the will was being written, and "we" asked him the numbers of the lots mentioned in the will and the districts in which they were situated, and he told "us." Witness does not remember that Mayo gave witness the numbers of the lots and districts, though he may have given them to Busbee. The table was about a foot and a half or two feet from the bed. At the time the will was to be signed witness had taken a chair and gone right to the head of the bed and had read it over to Mayo, who said it was all right—something to that effect. Witness went back to the table, took the pen and put it in the ink, took the will and put it upon a book and handed it to Mayo in the bed. Witness asked him if he could write, and he said yes—something that way. Witness asked him should he hand it to him; he said, "Oh no," then commenced getting up in bed, sat up on the edge of the bed with his feet hanging over. Witness took the table and pulled it right up next to him, and Mayo took the pen and wrote with it on the will. Witness does not know Stovall's exact position then.—Busbee testified: Witnessed the will. Saw Mayo sign it. Mayo

v 89-6

signed it freely and voluntarily. It was read over to him and he understood the contents of it. Thinks he was of sound mind and disposing memory. Met Mayo first twenty-five or thirty years ago. Did business for him before that as attorney at law. On the day he signed the instrument it seemed that his mind was as good as ever it was; as good as it was twenty-five years ago. He called witness's attention to something that occurred twenty-five years ago, etc. His mind seemed to be very clear. It had been about two years since witness had seen him. He was about sixty-eight or seventy years old. Propounder got witness to go down there, telling witness that Mayo wanted him to do some kind of writing and saying that he (the propounder) did not know what kind of writing, but that Mayo told him to tell witness that he wanted witness to write a paper making some disposition of his property. Witness's understanding was that he wanted witness to write deeds, and not being a notary public, he carried Crum who was, and told the propounder that if Mayo did want a will written it would be necessary to have witnesses, and told him to see Dr. Stovall—see if he could get him to go. Witness knew Dr. Stovall had been down there to see Mayo. One reason why he wanted Dr. Stovall to go was, he wanted to see if Mayo's mind was right; knew Mayo had been an invalid for some time and could not walk. Witness sat down by Mayo, who told him what property he had and how he wanted it to go. Witness took it down and carried it to Crum where Crum was sitting between the doors in the light, and read it to Crum who wrote it down, and after witness carried it back to Mayo Mayo said, "That is just the way I want it." Witness is certain that Stovall was there and heard the conversation between Mayo and witness; does not remember whether Crum heard it or not—thinks he did—he was in the house, etc.

G. W. WOOTEN, PATE & WARREN and MARTIN & SMITH, for plaintiffs in error.

BUSBEE & CRUM, C. C. DUNCAN and W. H. KIMBROUGH, *contra*.